[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff husband against the defendant wife. The wife has filed a counterclaim claiming a dissolution of the marriage. The parties were married on October 19, 1985, in Wilton, Connecticut. There are two children issue of the marriage: Haley Elizabeth Brown born August 11, 1990 and Erin Kelsey Brown born July 24, 1992, thus 12 and 10 at this time.
The parties have entered into a stipulation and agreement concerning the custody of the children and visitation. They have agreed upon joint legal custody, physical custody with the defendant mother, the mother's residence to be the primary residence of the children. The court has previously approved that agreement.
Problems first developed shortly after the parties' marriage. They sought counseling and after counseling both felt their marriage would succeed.
In April 2001, the plaintiff came home and said: "I want a divorce." This was totally unexpected by the defendant and she begged him to reconsider. They saw a therapist for six sessions. At the last therapy session, the plaintiff said he had had it. The defendant again asked him not to leave and stated she did not want the marriage to end. On July 30, 2001, the plaintiff moved out of the house. This had a devastating effect upon her. She saw a therapist, had difficulty eating and sleeping and lost ten to fifteen pounds. The therapist prescribed medication so that she could get through the day, to reduce her anxiety and the level of stress she was experiencing.
At the time of the marriage, both parties were working; the plaintiff then earning $23,000 per year which then increased in two jobs to $30,000-$40,000 per year and then in 1990 as marketing director of new business development at Pitney Bowes to $50,000-$60,000 per year. In 1997, he left. Pitney Bowes and worked for North East Utilities earning CT Page 171 $80,000-$90,000 per year. He left North East Utilities in 1998 and went to work for his present employer, Leadmasters, Inc. His current position is Vice President of Operations and his annual salary is $164,800. He is a college graduate and during the early years of the marriage pursued and received a Master's degree in Business Administration at the University of Connecticut. He has worked hard and has had little time for the family.
At the time of the marriage, the defendant was employed as a Box Office Manager at the Palace Theater. Thereafter, she worked at the Darien Dinner Theater in marketing and public relations earning $18,000 per year. Thereafter, she worked for a Medical Marketing Group and earned $30,000 per year. She worked there until the child Haley was born and at that time she was earning $38,000 per year. After Haley was born, she worked full time and then part time for the first four or five months. At that time, she and the plaintiff decided that it was more important for her to raise their daughter. She stopped working in 1991 and Erin was born in 1992. She was a "stay at home mom" except for a part time job as a receptionist at a nursing home two weekends per month until 2001. Her present job is at Kitchen and Bath Creations where she works in kitchen design earning $12.00 per hour. This is a part time job so that she can be home by 2:00 when the children return from school. She is a graduate of Ithaca College where she received a Bachelor of Fine Arts Degree in theater management.
The parties are each 42 years of age. The plaintiff describes his health as excellent. He stated that there is a family history of heart disease and he does take cholesterol medication. The defendant is generally in good health. She has an inner ear disease which first developed three years ago so that she does have a hearing loss in both ears. She states that this does not prevent her from working.
Both parties have described the children. Haley is a healthy child and a straight A student in the seventh grade. Erin, however, has had medical and psychiatric problems. She is presently treating with a psychiatrist, Dr. Kay Cowan. She started treatment with her three years ago and now sees her every three months. The cost for each session is $200. She is an "out of network" provider under the plaintiff's medical insurance plan so that the plan covers only fifty percent of Dr. Cowan's charge. Erin suffers from anxiety, can be extremely disagreeable, and has temper tantrums which involves screaming and throwing things. This has improved with medication. Erin, too, is a straight A student in the fifth grade.
The plaintiff has argued that the defendant has an earning capacity much greater than the amount she is earning at present. As already CT Page 172 noted, that job is a part time job. While the defendant does have a Bachelor's Degree in Fine Arts in theater management, it is more than twelve years since she worked in that capacity. Until her employment in her present position, she was out of the job market for ten years. When she returned to the job market, she consulted a placement agency for a marketing position. She was advised that her skills were out-of-date. The court finds that the defendant's part time employment is entirely appropriate at the present time and finds further that it is in the children's best interests that the defendant be home when the children return from school. With her education, her talent and her work experience, she should be able to work full time and be self-supporting after the children have graduated from high school.
The parties have disagreed on the appropriate time for the sale of the family residence. The plaintiff wishes to have his equity out of the house now, although he agrees it would be good for the girls to stay in the Trumbull school system if possible. He indicated that he is willing for the defendant to stay on in the house, although he wishes her to refinance so that he has no further obligation on the two mortgages. There is a credit line secured also by the real property obtained by the plaintiff for the first and last months' rent on the apartment in which he is residing and as the down payment on a new car. The defendant, on the other hand, wishes to remain in the home if she is financially able to do so. She has explored refinancing and been advised that this could be accomplished so that the plaintiff would no longer have liability on the mortgages.
In addition to the findings herein set forth, the court finds as follows:
1. There is the requisite jurisdiction.
 2. The allegations of the counterclaim have been proved and are true.
 3. The marriage has broken down irretrievably and the plaintiff is at fault for the breakdown of the marriage.
In arriving at a determination on the division of property, the court finds that both parties have contributed equally; the plaintiff by his working and the defendant by her working initially in the marriage, maintaining the household and her care of the children. Finally, the court finds that support in the amount of $500 per week is in accordance with the Child Support Guidelines. CT Page 173
The court has considered all of the factors of §§ 46b-81 and 46b-82
of the General Statutes with regard to alimony and division of property; it has also considered the provisions of § 46b-84 and § 46b-215b
regarding support for the minor children, and has considered the provisions of § 46b-56 of the General Statutes in approving the agreement of the parties dated November 21, 2002, and entering orders in accordance therewith. Finally, it has considered the provisions of §46b-62 with regard to attorney's fees. In addition to the provisions of the statutes, the court has reviewed all of the evidence together with the exhibits in arriving at its decision in this case.
The court enters the following orders:
1. A decree of dissolution of the parties' marriage shall enter on the defendant's counterclaim on the grounds of irretrievable breakdown of the marriage.
2. The agreement and stipulation entered by the court on November 21, 2002, providing for joint legal custody of the minor children with physical custody to be with the defendant is incorporated herein by reference.
3. The defendant shall give the plaintiff notice of any anticipated change in her place of residence beyond a twenty-five (25) mile radius from her present residence address.
4. The plaintiff shall pay to the defendant support in the amount of $500 per week and day care expenses to be paid 65 percent by the plaintiff and 35 percent by the defendant. Each party shall share equally in the cost of the children's extracurricular activities, summer camps and field trips. A contingent order for wage withholding shall enter to secure the order for support.
5. The defendant has requested an educational support order. The plaintiff objects to any such order. The court finds that it is more likely than not that the parents would have provided support to each of the children for higher education or private occupational school if the family were intact. The court has considered the relevant circumstances of Public Act 02-128 and enters an educational support order as provided in that act. The court orders that the plaintiff shall pay two thirds of the cost of each child's college education or private occupational school and the defendant shall pay one-third of such costs, with a limit equal to the cost of a full time in-state student charged by the University of Connecticut at the time of the child's matriculation. The availability of financial aid, including grants, CT Page 174 scholarships and loans, shall be considered by the parties. Should there be disagreement between the parties with respect to this, they shall return to court for further orders. The college fund shall be used for the children's education. This order is made in accordance with the provisions of P.A. 02-128 and modifiable in accordance therewith.
6. The plaintiff shall pay to the defendant alimony in the amount of $750 per week commencing January 6, 2003. Alimony shall be terminable upon the death of either party, the defendant's remarriage, or ten years from the date hereof, whichever first occurs. It shall be modifiable as to term or amount in accordance with the provisions of § 46b-86 (a) or § 46b-86 (b) of the General Statutes. The plaintiff shall pay to the defendant as additional alimony a sum equal to one-third of any bonus he receives from employment, the same to be paid within two weeks of its receipt.
7. Each party shall notify the other in writing within thirty (30) days of any change in his or her respective employment status and shall advise the expected salary or wages from such employment including any bonus or other pecuniary benefit.
8. The defendant shall maintain her life insurance during the children's minority with the children as the irrevocable beneficiaries and the plaintiff as the trustee. The plaintiff shall name the children as the irrevocable beneficiaries of one-half of the value of both of his policies with the defendant as the trustee. The remaining one-half of the plaintiff's life insurance shall name the defendant as the irrevocable beneficiary of the policies for as long as he is obligated to pay alimony. Should alimony terminate before the youngest child completes high school, then the children shall be named as beneficiaries of that portion of the policies as well.
9. The plaintiff shall maintain the children's medical insurance and the unreimbursed expenses shall be paid 65 percent by the plaintiff and 35 percent by the defendant. If the plaintiff does not have coverage for the children as a benefit of employment and the defendant does, then she shall maintain the coverage until the plaintiff has coverage again. If neither party has health insurance for the children as a benefit of employment, then the parties shall obtain the best private coverage they can reasonably afford and share the premiums as an unreimbursed medical expense. If the defendant has medical insurance as a benefit of her employment and the plaintiff wants her to cover the children, he shall reimburse the cost of same to the defendant. The parties shall share equally the expenses for Dr. Cowan. CT Page 175
10. The defendant shall retain the People's Bank checking account and the joint accounts listed on her financial affidavit. The plaintiff shall retain those bank accounts listed on his financial affidavit. The plaintiff shall retain the Putnam Investments account, the E-Trade account and the IBM stock. The defendant shall assign any right, title and interest she may have in these accounts to the plaintiff. The plaintiff's Pitney-Bowes 401(k) account shall be wholly his, free of any claim or demand by the defendant as shall be the security deposit on the plaintiff's condo rental. In the event the plaintiff exercises the options granted to him by Leadmasters, Inc., in the grant of the 2000 stock option plan, he shall pay the defendant a sum equal to one-half of the amount received after taxes.
11. The plaintiff shall be responsible for the First Visa USA joint credit card balance and he shall indemnify and save the defendant harmless thereon.
 The debt to Dr. Berger shall be divided with the plaintiff paying 65 percent and the defendant paying 35 percent.
 The debt to Capital One shall be paid by the defendant and she shall indemnity and save the plaintiff harmless thereon. The plaintiff shall be responsible for $1970 of the MBNA Visa account. The balance of this account shall be paid by the defendant and she shall indemnity and hold harmless the plaintiff from any claims or demands thereon.
 The parties shall each pay one-half of the debt to the defendant's parents in the amount of $9,100 each, which shall be paid no later than the closing of the sale of the marital residence as hereinafter set forth.
 Each party shall be responsible for any other debts they have accrued and shall indemnify and hold harmless the other from any claim or demand thereon.
 The plaintiff shall be responsible for the repayment in full of the home equity line of credit with PNC bearing account number 1503158011783279. He shall indemnify and save the defendant harmless thereon.
12. The defendant shall have exclusive use and possession of the marital residence until the youngest child of the parties shall complete high school but in no event later than her nineteenth birthday. At that CT Page 176 time or such earlier time as the defendant shall prefer, the property shall then be sold at a price to be agreed upon between the parties. If the parties are unable to agree upon a sales price, each party shall employ and pay for an appraiser. If the two appraisers are unable to agree, the appraisers shall select a third appraiser and the three appraisers shall agree upon the selling price, the cost of the third appraiser to be shared equally by the parties. The selling price shall be reduced by five percent (5%) every thirty (30) days until the property is sold. The selling price shall not be reduced below the lowest appraisal of the three appraisers without further order of the court. Upon the sale of the marital residence, the proceeds of sale shall be used first to pay the realtor's commission or commissions, the existing mortgage, reasonable attorneys' fees incurred in connection with the sale, conveyance taxes, and other normal and customary costs of closing. The plaintiff shall receive forty (40%) percent of the remaining proceeds. However, forty (40%) percent of the principal mortgage payments made by the defendant since the date of dissolution shall be deducted from the plaintiff's proceeds. The defendant shall receive the balance of the proceeds of sale. However, any lien or encumbrance against the property filed since the decree of dissolution shall be wholly the defendant's responsibility and deducted from her share of the proceeds. Until the property is sold, the plaintiff shall be responsible for forty (40%) percent of all extraordinary repairs or maintenance to the property. The defendant shall be responsible for the remaining sixty (60%) percent of such repairs or maintenance. Extraordinary repairs or maintenance shall be any single repair or maintenance in excess of $250. For any such repair or maintenance that exceeds $250, the defendant shall be responsible for the first $250. Any extraordinary repair or maintenance shall be discussed and agreed to by the parties before such maintenance or repair is done. However, in the event of an emergency, the defendant may cause such maintenance or repair to be performed with consultation with the plaintiff. In the event the parties are unable to agree upon any extraordinary repair or maintenance, the defendant may decide the necessity of the same and the plaintiff shall be responsible for his share. Forty (40%) percent of the cost of any repair or maintenance in which the plaintiff does not participate shall be deducted from his share of the proceeds prior to distribution. The defendant shall, when possible, arrange to refinance the existing mortgages so that the plaintiff is no longer responsible upon the same.
13. The parties shall exchange their tax returns annually by April 15th of the following year, including all 1099s, W-2s and all schedules and attachments. CT Page 177
14. Each party shall retain their respective automobiles. The plaintiff shall transfer all right, title and interest he has in and to the 1998 Toyota Sienna, and the defendant shall be wholly responsible for the outstanding loan on said automobile and shall indemnify and hold the plaintiff harmless thereon. Costs of transfer of title shall be the plaintiffs responsibility. The defendant shall be responsible for automobile insurance from the date of transfer.
15. The plaintiff shall be entitled to his clothing and personal effects remaining at the marital residence and to any items of furniture that are family pieces (furniture handed down by prior generations). The remaining tangible personal property at the family residence shall be the defendant's free of any claim or demand by the plaintiff. That tangible personal property in the plaintiff's possession shall be wholly his free of any claim or demand by the defendant. Any dispute between the parties shall be referred to Family Relations for resolution of such dispute. If any such dispute has not been resolved, the parties shall return to court for further orders.
16. Each party shall pay his or her own attorney's fees.
Judgment shall enter in accordance with the above orders.
 ___________________ EDGAR W. BASSICK, III JUDGE TRIAL REFEREE
CT Page 178